493 A.2d 750

**Edward L. DUNLAP and Shirley L. Benner, Appellants**

v.

**John Dean LARKIN and Thelma Morgan Farmerie, T/A Dean's Hardware and Building Supply.**

Superior Court of Pennsylvania.

Argued March 19, 1985.

Filed May 24, 1985.

596

Paul H. Millin, District Attorney, Warren, for appellants.

Rick Hernan, Warren, for appellees.

Before CIRILLO, HOFFMAN, and ROSENWALD, JJ.[1]

HOFFMAN, Judge:

The issues on appeal arise from a confusing mélange of three consolidated actions, one in equity for an injunction, a zoning appeal, and an action in ejectment. We affirm in part and reverse in part.

Before addressing appellants' contentions, we must first set out the relevant facts. Appellants, plaintiffs below, filed a complaint seeking a preliminary injunction to restrain appellees, defendants below, from erecting a building on appellees' property located at 142 Main Street, Tidioute Borough, Warren County, Pennsylvania. The gist of the April 19, 1982 complaint was that the proposed building would "not conform to the requirements of the Warren County Zoning Ordinance of 1965." (Appellants' Complaint for Injunction ¶ 3 at 1). On April 20, the lower court issued the preliminary injunction conditioned upon appellants entering security in the amount of $10,000. *See generally* Pa.R.Civ.P. 1531. Appellants did so. Following the April 26, 1982 hearing on whether the injunction should continue, the lower court ordered the record "remanded to the Zoning Hearing Board of Warren County to hear and determine pursuant to the Municipalities Planning Code and the Warren County Zoning Ordinance of 1965 the issue presented" in appellants' complaint. The court further ordered the injunction to continue and appellants to maintain their bond "in the event damages may ensue." A hearing was held before the Zoning Hearing Board on May 21, 1982, and the Board upheld the action of the zoning officer in granting a

1. Judge Edward Rosenwald of the Court of Common Pleas of Philadelphia County, Pennsylvania is sitting by designation.

permit to appellees.[2]   On June 28, appellants filed a notice of appeal from that decision in the Court of Common Pleas.

On June 25, 1982, appellees filed a petition to increase the amount of appellants' bond because of additional damages they allegedly suffered from the time of the issuance of the preliminary injunction.   Appellants moved to dismiss that petition, dissolve the injunction, and have their bond returned.   On August 2, after a hearing, the court ordered appellants to file either a cash or corporate bond in the amount of $20,000.   *See* 5 Goodrich-Amram 2d § 1531(b):7 (1977) ("increased security").   Because appellants failed to file the increased bond by the close of the next business day, August 3, appellees moved to dismiss appellants' appeal from the zoning board.   On August 4, the lower court dismissed the appeal and ordered the then current $10,000 bond to be retained until a hearing could be held to determine the damages suffered by appellees.   Appellants subsequently moved for reconsideration of the court's order, but there is no indication in the record of any action taken on that motion.

On October 13, 1982, appellants filed a complaint in ejectment against appellees.   Count I alleged that appellees encroached on appellants' property, and Count II alleged that appellants acquired, and appellees encroached upon, an easement by prescription in the vacant area between the parties' two buildings.[3]   Appellees answered the complaint and filed a counterclaim seeking damages *on the bond* "[b]ecause of [appellants'] unmeritorious appeal of the Zoning Hearing and unwarranted injunction against" them. (Appellees' Answer in Assumpsit with New Matter and Counterclaim to Appellants' Complaint in Ejectment ¶ 29 at 6).

Appellants then (1) moved to substitute a corporate bond for the cash bond, (2) filed a preliminary objection in the nature of a demurrer to appellees' counterclaim, and (3)

---

**2.**   A transcript of the hearing is part of the record, but the Board's May 27 decision is not.

**3.**   A third count in trespass seeking damages was not litigated.

moved to consolidate the three actions in accordance with Pa.R.Civ.P. 213. On January 17, 1983, the lower court ordered the three actions consolidated, and, on February 10, it ordered that appellants be permitted to substitute a corporate bond for their cash bond. By order and opinion of April 13, 1983, the court denied appellants' preliminary objection. Appellants thereupon filed an answer to appellees' new matter and counterclaim.

Following an October 4–5, 1983 jury trial, the jury returned verdicts (1) in favor of appellants on their claim that appellees' building encroached upon appellants' property, (2) against appellants on their claim for an easement by prescription, and (3) in favor of appellees for $8,000 for damages sustained by reason of the injunction issued to appellants. Timely filed post-trial motions were denied by the lower court by order and opinion of December 20, 1983.[4] This appeal followed.

Appellants contend that the $8,000 judgment in favor of appellees on their counterclaim should be vacated for the following reasons: (1) because appellants' complaint for an injunction was, in effect, an appeal to the Zoning Hearing Board, appellees are not entitled to damages as a matter of law; and (2) because appellants proved that appellees' building encroached upon their land, they cannot be liable for damages on the bond to appellees. Appellants also contend that they are entitled to a new trial on the question of their alleged acquisition of a prescriptive easement because the court below made a confusing and improper charge to the jury. For the following reasons, we agree that a new trial is warranted on the easement issue; however, we find that appellees are entitled to damages on the bond.

4. Appellants' post-trial motions included motions for new trial, in arrest of judgment, and for judgment n.o.v. The lower court's order stated only that their "motion for new trial in arrest of judgment is denied." It becomes clear by reading the court's accompanying opinion, however, that all of appellants' motions were considered and denied; thus, we will consider the December 20 order as denying all of appellants' motions.

## I.

▮ Appellants first contend that appellees are not entitled to damages on the bond. We disagree. We initially note that appellants did not challenge the validity of the Warren County Zoning Ordinance, but alleged instead that appellees' building would not conform to the requirements therein. Therefore, as appellants correctly assert in their brief, their proper remedy would have been to proceed in accordance with the provisions of the Pennsylvania Municipalities Planning Code (PMPC), 53 P.S. §§ 10101 *et seq.* Specifically, § 11007, which concerns decisions and orders not involving the validity of an ordinance, provides that aggrieved persons "shall first submit their objections to the zoning hearing board...." Appellants failed to do this. Furthermore, § 11001 makes it clear that "[t]he proceedings set forth in this article [concerning appeals] *shall constitute the exclusive mode* for securing review of any ordinance, decision, determination or order of the governing body of a municipality, its agencies or officers adopted or issued pursuant to this act." (Emphasis added). *Accord Harris v. Oil Service, Inc.,* 78 Pa.Commonwealth 510, 512 n. 4, 467 A.2d 1376, 1377 n. 4 (1983); *Appeal of Cibula,* 25 Pa.Commonwealth 333, 335, 360 A.2d 812, 813 (1976) (this requirement "mandatory"). Thus, we conclude that the lower court had no jurisdiction over appellants' equity action.

▮ Appellants contend, however, that the lower court's action in remanding the original injunction action to the Warren County Zoning Appeal Board was proper in accordance with 42 Pa.C.S.A. § 708 and that, because their complaint was, in effect, an appeal to the Board, no bond was required under the automatic stay provisions of 53 P.S. § 10916. Therefore, they argue that appellees cannot claim damage on the bond which the lower court ordered to be maintained when such bond would have been unnecessary in the first place. This argument is doubly misplaced.

Section 708(b) of the Judicial Code, 42 Pa.C.S.A. §§ 101 *et seq.,* which appellants rely upon, provides that

> [i]f an appeal is improvidently taken to a court under any provision of law from the determination of a government unit where the proper mode of relief is an action in the nature of equity, mandamus, prohibition, quo warranto or otherwise, this alone shall not be a ground for dismissal, but the papers whereon the appeal was taken shall be regarded and acted on as a complaint or other proper process commenced against the government unit or the persons for the time being conducting its affairs and as if filed at the time the appeal was taken.

42 Pa.C.S.A. § 708(b). This

> section, however, applies primarily to matters which have been improvidently filed with a *court* and which, rather than be dismissed, can be regarded and acted on by that *court* as if filed in proper form. Section 708 does not specifically or by implication authorize transfers between courts and local zoning hearing boards.

*Harris v. Oil Service, Inc., supra,* 78 Pa.Commonwealth at 513, 467 A.2d at 1377 (emphasis in original) (affirming the lower court's denial of appellants' transfer request).[5] Furthermore, § 708(b) applies to actions "commenced against the government unit" and not against private parties. The court below, then, should have quashed appellants' appeal from the decision of the zoning officer. *Township of Reserve v. Zoning Hearing Board,* 78 Pa.Commonwealth 496, 502, 468 A.2d 872, 875 (1983).

Even if the transfer were valid, the granting of a stay would not be "automatic." Section 10916 of the PMPC provides, in pertinent part, that

**5.** A similar argument has been made and rejected with respect to 42 Pa.C.S.A. § 5103 (transfer *between courts* ). *See Sorbara v. City of Pittsburgh,* 80 Pa.Commonwealth 425, 429, 471 A.2d 927, 929 (1984); *Harris v. Oil Service, Inc., supra,* 78 Pa.Commonwealth at 513–14, 467 A.2d at 1377; *Township of Reserve v. Zoning Hearing Board,* 78 Pa.Commonwealth 496, 501–02, 468 A.2d 872, 874–75 (1983). Section 5103(d), amended to § 5103 on December 20, 1982, effective in 60 days, could prescribe a different result, *contra Harris v. Oil Service, Inc., supra,* 78 Pa.Commonwealth at 513 n. 5, 467 A.2d at 1377 n. 5, but we note that it was not in effect at the time of the trial court's action in the instant case. *See Sorbara, supra,* 80 Pa.Commonwealth at 430 n. 3, 471 A.2d at 929 n. 3.

> [u]pon filing of any proceeding referred to in section [10914] and during its pendency before the board *all land development* pursuant to any challenged ordinance, order or approval of the zoning officer or of any agency or body, and all official action thereunder *shall be stayed unless the zoning officer or any other appropriate agency or body certifies to the board facts indicating that such stay would cause imminent peril to life or property, in which case the development or official action shall not be stayed otherwise than by a restraining order, which may be granted by the board or by the court having jurisdiction of zoning appeals on petition after notice to the zoning officer or other appropriate agency or body.*

53 P.S. § 10916 (emphasis added). Thus, as appellees argue, they would have had "a chance to argue for the right at least to continue with construction to a point at which the building would be closed in and be protected from vandals and weather." (Appellees' Brief at 13). Furthermore, if the appellants were to lose their zoning hearing board appeal and then proceed to appeal to court, *see* 53 P.S. § 11008, such filing of an appeal would *"not* stay the action appealed from but the appellants *may* petition the court having jurisdiction of zoning appeals for a stay." 53 P.S. § 11008(4) (emphasis added).

■ Putting aside the questions of the improper transfer and what the proper procedure under the PMPC would have been, we must conclude that the lower court had no jurisdiction to issue the injunction and hence no power to condition its issuance upon the filing of a bond. It would appear, then, that the court's lack of subject matter jurisdiction to issue the bond would render the judgment on appellees' counterclaim invalid. *Cf. Mamlin v. Tener,* 146 Pa.Superior 593, 596, 23 A.2d 90, 92 (1941) (subject matter jurisdiction can be attacked collaterally).

While we can find no caselaw in this Commonwealth holding that a court's lack of subject matter jurisdiction is a defense to an action on a bond, we refuse to approve such a

result. Otherwise, appellees would be unable to recover for damages resulting from the wrongfully-issued injunction. Other jurisdictions agree.

> Where a complainant has secured an injunction and stayed his adversary's proceedings, and thereby caused him to suffer damages, it is too late for the complainant to set up as a defense in an action on the injunction bond a want of jurisdiction in the court to grant the injunction. He is estopped to say that the court granted the injunction without jurisdiction. It does not lie in the mouth of one who has affirmed the jurisdiction of a court to grant an injunction, where he has accomplished his purpose by the injunction, to afterwards deny such jurisdiction.

*Johnson v. Howard*, 167 Miss. 475, 489, 141 So. 573, 575 (1932); *see generally* Annot., 82 A.L.R.2d 1064 (1962). Therefore, we hold that appellees are not barred from recovering damages on the bond even though the court below lacked the subject matter jurisdiction to issue it.

■ Appellants contend, nonetheless, that, because they proved an encroachment by appellees upon their land and because an encroachment is a ground for the issuance of an injunction,[6] they cannot be liable for damages on the bond. In support of this proposition, appellants cite *Large v. Steer*, 121 Pa. 30, 15 A. 490 (1888), which holds that

> [u]ntil there is such a final determination of the equity suit, as shows that the injunction was wrongfully issued, I do not see how an action would lie against the principal in the bond, much less against his sureties..... The reason for this is, that it may appear upon final hearing that the plaintiff was entitled to his injunction, although it may have been dissolved pending the bill.

*Large v. Steer, supra*, 121 Pa. at 33–34, 15 A. at 491 (citations omitted); *see also Winston v. Ladner*, 264 Pa. 548, 108 A. 22 (1919).

---

**6.** As a general rule, this statement is correct. *See Moyerman v. Glanzburg*, 391 Pa. 387, 393, 138 A.2d 681, 684–85 (1958) (granting of an injunction for an encroachment within the trial court's discretion unless encroachment done wilfully or intentionally).

We find appellants' argument flawed. There could be no final determination of the equity suit because, as we have stated, the lower court had no jurisdiction to entertain it. And the finding of an encroachment in appellants' favor is of no avail to them because the ejectment action simply has nothing to do with the equity action. The question is, was the injunction wrongfully issued? We have answered that question affirmatively and held that the court's lack of subject matter jurisdiction would not prevent appellees from recovering on the bond. *Cf.* Pa.R.Civ.P. 1531(b)(1) (plaintiff liable for damages if injunction is dissolved because improperly granted); 5 Goodrich-Amram 2d § 1531(b):4 at 282 (1977) ("The phrase 'because improperly granted' ... will apply no matter how the injunction is lifted....."). Therefore, appellants cannot assert appellees' encroachment as a ground for avoiding damages on the bond.[7]

## II.

Appellants next contend that, because the lower court instructed the jury in accordance with the principles of adverse possession rather than those of prescriptive easements, they are entitled to a new trial. A jury "charge should be clear and precise and so couched as not to confuse

7. Appellants argue that this is a "ludicrous result" in that appellees' building was found to encroach on appellants' property, yet the jury awarded appellees $8,000 for water damage done to the building in its unfinished state. If the building was fully completed, they continue, it, rather than only a partially finished building, would have to be torn down. (Appellants' Brief at 12). Not only is this argument irrelevant, in that the injunction was improperly issued, but it can be made only in hindsight (for at the time appellants got their injunction they did not know, or did not assert, that appellees' building encroached on their property). Furthermore, appellees quite properly point out that they could, instead, (1) purchase from appellants the land encroached upon; (2) alter the building so it does not encroach; or (3) indeed, level the building, but salvage the materials and sell them to reduce their resulting losses. (Appellees' Brief at 17). *See also* Lower Court Opinion at 10 (because appellees must sustain damages in moving their structure does not exonerate appellants for the damages they caused).

the jury." *Osterritter v. Holl,* 259 Pa.Superior 112, 117, 393 A.2d 742, 744 (1978). However,

> contradictory instructions are not always reversible error. An erroneous statement of law in one portion of the charge can be rendered harmless by a subsequent correct statement of the same principles if the jury is clearly instructed that the latter statement and not the earlier one is the correct statement of the principle.

*Id.,* 259 Pa.Superior Ct. at 117–18 n. 5, 393 A.2d at 745 n. 5. In evaluating the charge, we consider it in its entirety to determine whether error was committed and, if so, whether such error was prejudicial to the complaining party. *Berry v. Friday,* 324 Pa.Superior 499, 503, 472 A.2d 191, 193 (1984), *citing Slavish v. Ratajczak,* 277 Pa.Superior 272, 419 A.2d 767 (1980).

While the cases do not always list the elements with precision, an easement by prescription is established by showing an (1) adverse, (2) open, (3) notorious, and ´4) continuous and uninterrupted use for twenty-one yea. s. *Keefer v. Jones,* 467 Pa. 544, 547, 359 A.2d 735, 736 (1976); *Boyd v. Teeple,* 460 Pa. 91, 94, 331 A.2d 433, 434 (1975); *Bodman v. Bodman,* 456 Pa. 412, 414, 321 A.2d 910, 912 (1974); *Loudenslager v. Mosteller,* 453 Pa. 115, 117, 307 A.2d 286, 287 (1973); *Minteer v. Wolfe,* 300 Pa.Superior 234, 241–42, 446 A.2d 316, 320 (1982); *Adshead v. Sprung,* 248 Pa.Superior Ct. 253, 256, 375 A.2d 83, 84 (1977). To claim title by adverse possession, however, one must prove an (1) actual, (2) visible, (3) notorious, (4) exclusive and distinct, (5) hostile, and (6) continuous use for twenty-one years. *Conreault Lake Park, Inc. v. Klingensmith,* 362 Pa. 592, 594, 66 A.2d 828, 829 (1949); *Kaminski Brothers, Inc. v. Grassi,* 237 Pa.Superior Ct. 478, 480, 352 A.2d 80, 81 (1975) (allocatur denied). We note that one claiming an easement by prescription, as the above lists indicate, need not show an actual nor an exclusive and distinct use.

Keeping the above principles in mind, and reading the instant charge as a whole, we believe that it was confusing. The pertinent parts are as follows:

Now, the Plaintiffs tell you that they have met that burden of proof simply through their title that they acquired when they bought this property, this restaurant, this bar; that this alleyway is their land. They say if you do not find that to be true, then they tell you they have acquired that property by adverse possession; that is, through an easement over the years.

Now, an easement is a right to use property as distinguished from a claim of title to the land itself. It's simply the right to go across the property or to use the property, even though the legal title, the deed title may be in the Defendants.

Now, the law has developed on that and I'm making reference to an Appellate Court case and I'm going to read to you and explain it as it goes along so that you will more readily understand the holding and the case says this; it is well settled that he who asserts title by adverse possession must prove it affirmatively.

Now, adverse possession are words that speak for themselves. It's a possession claimed adversely against the title owner or the rightfull [sic] owner of land when the claimant, the Plaintiffs, have a title deed to that property. It is well settled that he who asserts title by adverse possession must prove it affirmatively. *One who claims by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for 21 years. Each of these elements must exist. Otherwise, the possession will not confirm title.* An adverse possessor must intend to hold the land for himself and that intention must be made manifest by his acts. He must keep his flag flying and present a hostile front to all adverse pretenses. Sporadic use of land by one without title to it will not opt to give him title no matter how often repeating. The possession may be adverse by enclosing it or cultivating the land or constant using it but nothing short of an actual possession permanently continued will take away from the owner the possession which the law at-

taches to the legal title; that is, the deed title. Temporary acts on the land without an intention to seek and occupy it for residence or cultivation or otherwise or other permanent use consistent with the nature of the property are not the actual possession required. Such occupancy must be exclusive and of such a character as compels the real owner to take notice of the possession of the disowner; that is, the one claiming by adverse possession.

Now, the reason then for that, ladies and gentlemen, is if a party owns a piece of land by deed, what we call the deed or title owner and another one comes along and claims it without any deed or title but claims adverse possession, we often think of sometimes as trespassor or squatters or whatever. You've heard different language attributed to an adverse possession. The law says that if he does this openly and notoriously and hostile as contrary to mutual consent or permission, and this exists for a period of 21 years, then the law says, well, the title owner, you know, really doesn't care. So, he is tacidly [sic] consenting to have his title taken from him by this means. He has 21 years to do something about it. If he doesn't, then the law says that title, that land should be free from that dispute. Then, if he doesn't do anything about it.

Now, the law further says that even though this must be continuous and notorious and hostile, that ... does not mean that there must be a day to day use that is required to satisfy the continuity element essential to the proscriptive [sic] right. The inability to measure the exact width or dimentions [sic] of a piece of property that in itself over 21 years will not defeat a proscriptive [sic] right of the land.

Now, that goes to the fact that if one is claiming by adverse possession, the land has to be identified what he's claiming and the law does not make that so precise that if there is some inability to measure the exact dimensions, that will not defeat the right to claim by adverse posses-

sion nor is the law so unreasonable as to require that the use be continued constantly for 24 hour period each day of the week, month and year and so forth.

(N.T. October 5, 1983 at 7–10) (emphasis added). After the court studied the parties' requests for additional instructions, it added:

Now, for the Plaintiffs and this has to do with the issue of the easement acquired by adverse possession. You recall I told you that an easement is a right to use someone else's land as contrary to acquiring title to it by adverse possession and in doing that, I told you that to acquire the right it must be open and hostile and notorious and adverse and exclusive and possession over a period of 21 years either by themselves or jointly with others. It doesn't have to be an exclusive use by the Plaintiffs or their predecessors in title. Otherwise, other people could have used it jointly with the Plaintiffs, but that only speaks to the element of exclusiveness in that definition of that adverse possession to acquire an easement.

(*Id.* at 29). The verdict slip given to the jury read: "Do you find [appellants] have acquired an easement to the property between the parties' respective buildings?" The jury answered in the negative. (*Id.* at 36).

We believe a new trial on this issue is warranted. While the court apparently used the term "adverse possession" interchangeably with the term "easement," it charged the jury not on the elements of an easement by prescription, but rather on those of adverse possession. Although the judge did attempt to correct the charge on the "exclusivity" element, we find even that portion of the charge contradictory: "It doesn't have to be an exclusive use...." was followed by "Otherwise, other people could have used it jointly...." Nor can we agree with appellees that "[t]here is no reason to believe that the jury did not resolve the question of fact in favor of [appellees]." (Appellees' Brief at 20). If the jury found that appellants' possession was neither actual nor exclusive and distinct but that the other

elements of acquiring a prescriptive easement were met, then the verdict was improper. We have no way, of course, of knowing on what basis it was that the jury found against appellants. Therefore, we believe a new trial is necessary.

In light of the foregoing, we affirm the judgment of the court below awarding appellees $8,000 in damages on their counterclaim, but reverse and remand for a new trial on appellants' alleged acquisition of an easement by prescription.

Affirmed in part and reversed in part. Remanded for proceedings consistent with this opinion. Jurisdiction is not retained.