597 A.2d 667

**NEWELL ROD AND GUN CLUB, INC., Appellant,**

v.

**Walter BAUER, Florence Bauer, Lehigh Valley Railroad Company, Andrew Andjeski, Susan Linso, Ferdie Marek, F.C. Harrison, D.J. Waller, Oscar R. Hartel, Matilda G. Hartel, Their Agents, Heirs, Successors, Representatives and Assigns, Appellees.**

Superior Court of Pennsylvania.

Argued May 23, 1991.

Filed Sept. 27, 1991.

76

Franklin E. Kepner, Jr., Berwick, for appellant.

John Kocsis, III, Athens, for appellees.

Before WIEAND, BECK and HUDOCK, JJ.

HUDOCK, Judge:

In the instant appeal, Appellant, Newell Rod and Gun Club, Inc., (the Club), claims that the trial court erred in granting it a prescriptive easement or right-of-way rather

than title in fee to a roadbed formerly used as a railroad. We disagree and thus affirm the order of the court below.

The facts underlying the present appeal, as listed in the trial court's factual findings, may be summarized as follows: The Club is the owner in fee simple of several parcels of land in Colley Township, Sullivan County, Pennsylvania, totalling approximately 1,320 acres. Appellees, Walter Bauer and Florence Bauer, his mother, (the Bauers), are the fee simple owners of a parcel of property, approximately 118 acres, which adjoins the southerly boundary of the Club's lands. Title to both the Club's and the Bauers' land originates from a common grantor, (Harrison and Waller). In 1887, Harrison and Waller conveyed a sixty-foot right-of-way to a railroad which later came to be known as the Lehigh Valley Railroad, (the railroad). The right-of-way "bisected" what is now the Club's and the Bauers' land. (Trial Court Opinion, Finding of Fact No. 6). The railroad used the right-of-way for rail purposes for approximately fifty years. In the late 1930's, the railroad ceased using the railroad bed and removed all railroad ties. The railroad made no further use of the properties after this time period.

In 1947, the Club leased some of the lands it later purchased and began using the "abandoned railroad bed", (Trial Court Opinion, Finding of Fact No. 8), as a roadway to gain access to the lands. The Club did not seek the consent of the railroad. The Club began purchasing the real estate it now owns in 1950. From 1947 through 1990, the Club improved the railroad bed to make it useable as a roadway. The Club's members annually repaired the road and its drainage pipes, which they installed. During this same period, the Club maintained a locked chain gate at the entrance of the roadway. Only members, with one exception, were issued keys to the lock. Access to the roadway, and thus adjoining lands, is barred to the public.

Both the Club and the Bauers use the roadway to gain access to their realty, first crossing the lands of the Club, then that of the Bauers, and then the Club's land again. The Bauers acquired title to their parcel of land by deed in

1967. The Bauers' deed also grants to them "the interest of the grantors in the old Lehigh Valley Railroad right-of-way ... to and across [Bauers' parcel], subject to the right to use the same as previously granted ... [to the Club.]"[1] (Trial Court Opinion, Finding of Fact No. 12). In 1968, Walter Bauer asked for and received a key to the locked chain gate at the entrance of the road. From 1968 to 1990, the Club and the Bauers used the road in common and shared some of the expenses of care and maintenance. In 1979, the railroad conveyed its interest in that part of the right-of-way over the Bauers' lands to the Bauers by quit-claim deed. The quitclaim deed states that the conveyance "is under and subject to ... visible easements and easements and restrictions of record ..." (Trial Court Opinion, Finding of Fact No. 15).[2] From 1947 to 1990, the Club has

1. A review of an earlier deed, in which a parcel of the Club's current property was conveyed to them, reveals that the grantors conveyed a "right-of-way for ingress, egress and regress to the [parcel] by way of the old Lehigh Valley Railroad right-of-way ... provided grantors have the power in law to grant such right-of-way, and subject to whatever rights the Lehigh Valley Railroad may have, if any, in said right-of-way ..." (Plaintiff's Exhibit No. 1).

2. On appeal, the Club maintains that the trial court erred in finding that the Bauers owned the disputed property in fee simple when the court made a finding of fact that the railroad had only a right of way over the land. The Club further argues that, as the trial court also found that the railroad abandoned the property, the right-of-way terminated and the railroad had nothing to convey to the Bauers by quitclaim deed. We do not agree with the Club's reasoning. Initially, we note that because the Bauers have not appealed the award of a prescriptive easement to the Club, an award based on finding the property was abandoned by the railroad, the propriety of the trial court's determination of abandonment is not before us. However, the trial court did find that the railroad was originally conveyed a right-of-way. In such a situation, upon abandonment by the railroad, the easement is extinguished and the land is owned in fee simple by the owner of the land on both sides of the right-of-way. *Fleck v. Universal–Cyclops Steel Corp.*, 397 Pa. 648, 156 A.2d 832 (1959). The owners of both sides of the right-of-way in the present case are the Bauers, who are also successors in interest to Harrison and Waller, who apparently still owned the particular parcel in the late 1930's. Thus, the trial court's determination that the Bauers owned the disputed strip of land in fee simple is supported by the trial court's factual findings. The Club's claim to the contrary is, therefore, without merit.

openly and continuously used the former railroad bed as a road to gain access to its lands. The road as used is twelve feet in width.

The Club instituted an action by filing a complaint to quiet title on June 24, 1988. Thereafter, in October, 1988, the Club obtained default judgments against all of the other named defendants with the exception of the Bauers. The matter then proceeded to a non-jury trial. After making the above-summarized factual findings, the trial court's conclusions of law were that the Club owned a prescriptive easement over the Bauers' land for the purposes of ingress and egress to its hunting premises. The trial court further concluded that the easement or right-of-way was for the use in common with the Bauers and that it was twelve foot wide and followed the presently existing roadway. The Club claims that the evidence it presented proved that they were entitled to fee ownership of the land, as such an interest was acquired through adverse possession. We do not agree and, therefore, affirm the trial court's award of a prescriptive easement to the Club.[3]

Our research fails to discover an appellate case where use of a road over the land of another for an extended period of time, along with improving the roadway, was sufficient to support a finding of fee ownership of the land by adverse possession. Indeed, the cases we have discovered support the trial court's award of a prescriptive easement. The difficulty in determining this issue is the fact that Pennsylvania case law, like that of its sister states, has blended the doctrines of prescription and adverse possession.

■ The chief distinction between the doctrines is that in adverse possession the claimant occupies or "possesses" the land of fee owner, whereas in prescription the claimant makes some easement-like use of it. In defining a prescriptive easement, this Court has used both the terms "use" and "possession." *Compare Walley v. Iraca*, 360 Pa.Su-

---

**3.** Once again, we note that we cannot, as requested by the Bauers in their brief, reverse the award of the prescriptive easement since they did not appeal the trial court's decision.

per. 436, 441, 520 A.2d 886, 889 (1987) ("A prescriptive easement is created by (1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use for a period of twenty-one (21) years."); *Hash v. Sofinowski*, 337 Pa.Super. 451, 455, 487 A.2d 32, 34 (1985) ("It is axiomatic that an easement by prescription arises by actual, continuous, adverse, visible, notorious and hostile possession of the property in question for a period of 21 years."). Likewise, in defining the doctrine of adverse possession, this Court has interchanged the terms "use" and "possession." *Compare Dunlap v. Larkin*, 342 Pa.Super. 594, 605, 493 A.2d 750, 756 (1985) ("To claim title by adverse possession, however, one must prove an (1) actual, (2) visible, (3) notorious, (4) exclusive and distinct, (5) hostile, and (6) continuous use for twenty-one years."); *Schlagel v. Lombardi*, 337 Pa.Super. 83, 86, 486 A.2d 491, 493 (1984) ("[O]ne who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years.").

■ As can be seen by the above definitions, adverse possession, unlike prescription, requires exclusivity. In *Dunlap v. Larkin, supra,* property owners/appellants brought an action to enjoin the erection of a building, alleging that it would not comply with a county zoning ordinance. A preliminary injunction was issued and bond made, and the action was subsequently remanded to the zoning hearing board which upheld the grant of the building permit. An action was then brought by builders/appellees to enforce bond for damages allegedly resulting from the injunction. Property owners/appellants then brought an action in ejectment based upon an alleged easement by prescription. The trial court entered judgment, following a jury verdict, in favor of property owners/appellants on their claim that the building encroached upon their property, against property owners/appellants on their claim for an easement by prescription, and in favor of appellees for $8,000 for damages sustained by reason of the injunction issued to property owners/appellants. Among the issues

raised on appeal, property owners/appellants claimed that they were entitled to a new trial on their alleged acquisition of a prescriptive easement because the trial court gave a confusing and improper charge to the jury. This Court agreed, stating:

> While the [trial] court apparently used the term "adverse possession" interchangeably with the term "easement," it charged the jury not on the elements of an easement by prescription, but rather on those of adverse possession. Although the judge did attempt to correct the charge on the "exclusivity" element, we find even that portion of the charge contradictory....

*Id.*, 342 Pa.Superior Ct. at 608, 493 A.2d at 757–58. In making this determination, this Court stated that one claiming an easement by prescription need not show an exclusive and distinct use. Upon reviewing the pertinent part of the trial court's instructions, this Court concluded that this factor was not adequately conveyed to the jury.

Another factor for establishing a prescriptive easement that is somewhat less stringent than that required for adverse possession is the "continuous use" of the property. In establishing a prescriptive easement, constant use need not be demonstrated in order to establish the continuity of the use. Rather, "continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right." *Minteer v. Wolfe*, 300 Pa.Super. 234, 240, 446 A.2d 316, 319 (1982), *quoting Keefer v. Jones*, 467 Pa. 544, 548, 359 A.2d 735, 737 (1976). A review of the record in the instant case leads us to conclude that the trial court, based upon its findings of fact, properly awarded the Club a prescriptive easement. The record reveals that several members of the Club used the road on a regular basis and provided substantial improvements to the road, for almost a fifty-year period, under the belief that they had a property interest in the road.[4]

4. Testimony, however, was also presented to the effect that the Club had considered buying portions of the railroad bed from the railroad.

All of this evidence, however, is consistent with an easement-like use of the property. Our difficulty is finding that the Club exercised exclusive "use" over the property such that it is entitled to title to the land by adverse possession. In an action to quiet title, an appellate court will not reverse the determination of the trial court absent an error of law or capricious disregard of the evidence. *Klebach v. Mellon Bank,* 388 Pa.Super. 203, 565 A.2d 448 (1989). While the testimony presented by the Club characterized the Bauers' use of the driveway as by their permission, and that the general public was excluded from using the road, the trial court found that the road was used in common by both the Club and the Bauers. This finding is supported by Walter Bauer's testimony that he had also worked to improve the road and shared some maintenance costs. Thus, the Club's claim that the trial court erred in failing to award them title to the railroad bed by adverse possession is without merit.[5]

Order affirmed.

It was explained that the Club thought it would be cheaper to pay the railroad a small amount of money for another section of the railroad bed, (not at issue in the case *sub judice* ), rather than risk litigation in regard to ownership. This testimony indicates not only a recognition of a subservient interest in the railroad bed, but also that the railroad had not abandoned its right-of-way. *See Pistner Bros., Inc. v. Agheli,* 359 Pa.Super. 177, 518 A.2d 838 (1986) (claimant's offer to purchase property from true owner constitutes recognition that his title was subservient, breaking the required continuity of adverse possession).

5. This disposition is consistent with other cases that found that continuous use and improvements to land not owned by the claimant, but used to cross over to the claimant's property, establishes a prescriptive easement. *See e.g. Brouse v. Hauck,* 330 Pa.Super. 58, 478 A.2d 1348 (1984) (use and maintenance of entire vacated road crossing over neighbor's property, to gain access to entrance of barn and fields, was sufficient, if believed, to show a prescriptive right to use the disputed southern half of the vacated road for right-of-way purposes).

The remaining claims raised by the Club require only brief comment. The Bauers claim, (albeit in vain, see n. 2, *infra* ), that the railroad *had not* abandoned the railroad bed. Thus, the Club's claim that the Bauers failure to raise abandonment as an affirmative defense constituted waiver is meritless. While the Club's claim that the trial court erred in refusing to permit a witness to respond to whether the description of the land in the Bauers' deed included the disputed railroad bed is of possible merit, we fail to see how this prejudiced the

Club since the Bauers deed was admitted into evidence and the trial court could clearly recognize that the twelve foot roadway crossed the Bauers' land.