J. A30037/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALDER RUN, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RICHARD E. LUTZ, TRUSTEE, | : | |
| NANCY M. LUTZ, TRUSTEE RHCC, LLC, | : | |
| JAMES A. STRAWSER, | : | |
| LESTER H. STRAWSER, | : | |
| DANIEL D. STRAWSER, | : | |
| EARL T. STRAWSER, | : | |
| PALMER E. STRAWSER, | : | |
| AMOS T. STRAWSER, | : | |
| KEVIN O. STRAWSER, | : | |
| SHANE A. STRAWSER, | : | |
| KEITH A. STRAUSER, | : | |
| ELROY D. STRAUSER, | : | |
| JOSHUA E. STRAUSER, | : | |
| DALE E. GOODLING, | : | |
| ANTHONY L. PORTZLINE, | : | |
| TERRY L. ARNOLD, | : | |
| EDWARD P. VERES, JR., | : | |
| ANN F. VERES, RONALD R. SEILER, | : | |
| DEBORAH L. CARNS, GARETH O. WICK, | : | |
| AND DURVIN Z. WICK | : | |
| | : | No. 797 WDA 2017 |
| APPEAL OF: RICHARD E. LUTZ, | : | |
| TRUSTEE | : | |

Appeal from the Judgment, May 10, 2017,
in the Court of Common Pleas of Clearfield County
Civil Division at No. 15-309-CD

BEFORE: BOWES, J., STABILE, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED FEBRUARY 21, 2019**

Appellant, Richard E. Lutz, Trustee ("Lutz"), appeals from the May 10,

2017 judgment entered following the trial court's February 21, 2017 order

granting appellee, Alder Run, LLC ("Alder Run"), an easement by prescription

across the respective properties of the defendants in the underlying action.[1]
After careful review, we affirm.

This matter stems from a longstanding dispute over access to a dirt roadway connected to Township Road 727 that intersects parcels of land owned by neighboring property owners in rural Clearfield County, Pennsylvania. (Notes of testimony, 12/12/16 at 60-61.) The trial court summarized the relevant facts of this case as follows:

> Lutz purchased a parcel of land in Graham Township, Clearfield County, Pennsylvania by deed dated March 14, 2003 and recorded on March 19, 2003. The property was purchased from the Clearfield Bank and Trust Company at an auction held on November 29, 2002. On the same date, [Alder Run] also purchased a parcel of land from the Clearfield Bank and Trust Company. The deed for this property, consisting of a parcel of land containing 487 acres, was dated February 25, 2003 and was recorded on February 28, 2003. [Alder Run's] predecessor in title[] was the Clearfield Bank and Trust Company who held the property in trust for the Thomas H. Forcey heirs [(hereinafter, "the Forceys")]. Thomas H. Forcey became the owner of the land by deed dated November 15, 1880. Said deed is recorded in the Clearfield County Deed Book 11, page 380. [Alder Run's] property, and the properties of the Defendants, are generally located to the north of Lutz's property.

---

[1] Although Lutz is the only named appellant in this matter, he makes several arguments on behalf of the defendants in the underlying action, Nancy Lutz, Trustee of RHCC, LLC, James A. Strawser, Lester H. Strawser, Earl T. Strawser, Palmer E. Strawser, Amos T. Strawser, Kevin O. Strawser, Shane A. Strawser, Keith A. Strauser, Elroy D. Strauser, Dale E. Goodling, Anthony L. Portzline, and Terry L. Arnold, whom he collectively refers to as both "Lutz and Strauser" and "Appellants" throughout the duration of his brief. It is unclear from the record from what or whom Lutz is a trustee of as RHCC, LLC has not been identified.

Prior to Lutz['s] purchasing the property in 2002, Lutz had inspected the property and observed that there was a road, which proceeded through the property to the north. Lutz acknowledged that he had been aware of this roadway. Lutz further admitted that he knew that the roadway was used by Defendants Seiler, Strawsers, Strausers, Veres, and other property owners owning property to the north of Lutz's tract as a way of accessing their properties.

In 2004 Lutz constructed a gate across the roadway, which has become the main point of contention in the instant litigation. After constructing the gate, Lutz provided keys to some property owners who used the roadway to access their properties, but denied keys to other landowners. The record in this case indicates that the parties who own land to the north of the Lutz tract, as well as their predecessors in title, used the roadway in question to access their properties for various purposes including accessing camps, accessing residences, hunting, hauling coal, and hauling timber. The record also indicates that [Alder Run's] predecessors in title used the roadway to access what is now [Alder Run's] property for hunting purposes, and to haul timber from the property.

After acquiring title to the property in 2002, [Alder Run] admittedly used the roadway in question very infrequently. [Alder Run's] property was accessed on the day of the sale by the owner, and it was accessed on two subsequent occasions by [Alder Run's] property managers. Neither the owner of Alder Run, LLC, nor its property managers, have attempted to access [Alder Run's] property f[ro]m the time Lutz constructed his gate, except for one occasion in 2014. During the 2014 occasion, it was [Alder Run's] property manager, Robert Van Blargan, who accessed [Alder Run's] property by walking around Lutz's gate and using the roadway in question.

Trial court opinion and order, 2/21/17 at 2-4 (citations and footnotes omitted).

On March 5, 2015, Alder Run filed a complaint requesting that the trial court designate the access roadway in question as a private road pursuant to 36 P.S. § 2731 **et seq.**, or grant Alder Run an easement by prescription. Preliminary objections were filed by several of the defendants, and following a June 8, 2015 hearing, the trial court ordered Alder Run to file an amended complaint. On June 29, 2015, Alder Run filed an amended complaint, to which additional preliminary objections were filed by Lutz and several of the defendants. The trial court dismissed these preliminary objections on October 13, 2015. Thereafter, on December 12, 2016, this matter proceeded to a non-jury trial. Following a non-jury trial, the trial court entered an order on February 21, 2017, granting Alder Run an easement by prescription across the properties in question "by use of the dirt roadway that is connected to Township Road 727." (Trial court opinion and order, 2/21/17 at 10.) On March 3, 2017, Lutz filed post-trial motions that were denied by the trial court on May 5, 2017. On May 10, 2017, the Clearfield County Prothonotary entered judgment in this matter.

On June 1, 2017, Lutz filed a timely notice of appeal. That same day, the trial court directed Lutz to file a concise statement of errors complained of on appeal, in accordance with Rule 1925(b), within 21 days. Lutz's Rule 1925(b) statement, dated June 15, 2017, was time-stamped by the Clearfield County Prothonotary as filed on June 26, 2017, four days after expiration of the 21-day filing period. (**See** certified record at No. 71.) The

trial court did not file a Rule 1925(a) opinion addressing the issues presented in Lutz's Rule 1925(b) statement. On July 27, 2018, this panel issued a memorandum concluding that Lutz waived all his issues on appeal for failing to file a timely Rule 1925(b) statement in accordance with the trial court's June 1, 2017 order. On August 8, 2018, Lutz filed an application for reargument wherein he attached copies of United States Postal Form 3817 evidencing that he had timely served a second copy of his Rule 1925(b) statement on the Clearfield County Prothonotary and the trial judge on June 22, 2017, in accordance with Pa.R.A.P. 1112(c).[2] (**See** "Application for Reargument," 8/8/18 at Appendix B, Exhibits 1, 2.) On September 20, 2018, we issued a **per curiam** order granting panel reconsideration and withdrawing our July 27, 2018 memorandum.

On appeal, Lutz raises the following issues for our review:

> A. Did the trial court err when it granted [Alder Run] a prescriptive easement over the real property of the [defendants and Lutz]?
>
> B. Did the trial court err in how it applied 68 P.S. [§] 411, pertaining to prescriptive easements in unenclosed woodlands and which was raised as an affirmative defense by [defendants and Lutz] in the instant case?

Lutz's brief at 6.

---

[2] Curiously, the United State Postal Forms Lutz supplied in his application for reargument, evidencing the timely filing of his Rule 1925(b) statement on June 22, 2017, were not appended to his concise statement and **do not** appear anywhere in the certified record.

Our standard of review in non-jury cases is as follows:

> It is well-settled that our review of the trial court's decision after a non-jury trial is limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law.
>
> > Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.
> >
> > The trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence. Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the lower court. With regard to such matters, our scope of review is plenary as it is with any review of questions of law.

*Leoni v. Leoni*, 153 A.3d 1073, 1077-1078 (Pa.Super. 2017) (citations and internal quotation marks omitted), *appeal denied*, 169 A.3d 583 (Pa. 2017).

We begin by addressing Lutz's claims that the trial court erred when it granted Alder Run an easement by prescription across his property. (Lutz's brief at 6.) Specifically, Lutz takes issue with the fact that:

> No evidence was presented at trial nor did the trial court make any findings as to the specific location of the alleged prescriptive easement. Also, no evidence was presented at trial nor did the trial court make any findings as to when the required twenty-one year time period of adverse usage of the alleged prescriptive easement occurred. Finally, no evidence was presented at trial [that] would support the trial court's finding as to continuous and adverse usage of the alleged prescriptive easement by Alder Run or its predecessors in title.

*Id.* at 13.

"A prescriptive easement is a right to use another's property which is not inconsistent with the owner's rights and which is acquired by a use that is open, notorious, and uninterrupted for a period of 21 years." *McNaughton Properties, LP v. Barr*, 981 A.2d 222, 225 n.2 (Pa.Super. 2009). "A prescriptive easement differs from land acquired by adverse possession, because an adverse possessor acquires the land in fee, whereas the prescriptive easement holder is only entitled to an easement-like use." *Soderberg v. Weisel*, 687 A.2d 839, 843 (Pa.Super. 1997) (citation omitted). In order to create a prescriptive easement, the user must show "(1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use [of land] for a period of twenty-one (21) years." *Village of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.*, 103 A.3d 814, 822 (Pa.Super.

2014), ***appeal denied***, 125 A.3d 778 (Pa. 2015). The burden of proving these elements falls on "the party asserting the easement" by "clear and positive proof." ***Id.*** (citation omitted).

## A.    Specific location of the prescriptive easement

Lutz first argues that the trial court erred in granting Alder Run a prescriptive easement over his property because "no evidence was presented at trial nor did the trial court make any findings as to the specific location of the alleged prescriptive easement." (Lutz's brief at 18.) In support of this contention, Lutz avers that:

> Alder Run did not present a survey of the alleged right of way. Alder Run did not present an engineer's drawing of the alleged right of way. Alder Run did not provide any evidence regarding the length of the alleged right of way nor did it present evidence as to the width of the alleged right of way at trial.

***Id.*** at 18-19. Lutz avers that, "[g]iven the lack of any such evidence," the trial court should not have made any factual findings or drawn any legal conclusions with respect to the location of the alleged right of way. (***Id.*** at 19-20.) We disagree.

Our review reveals no case law in this Commonwealth indicating that the boundaries of a prescriptive easement need be supported by a survey or engineer's drawing, nor set forth with sufficient precision in a metes and bounds description, in order to be enforceable. This court's decision in ***McNaughton***, however, which involved an express easement, is particularly

enlightening. In **McNaughton**, a panel of this court concluded that the trial court lacked the authority to order the relocation of an express easement in order to permit the owner of the servient estate to develop its property. **McNaughton**, 981 A.2d at 223. In reaching this decision, the **McNaughton** court emphasized that, "unlike with express easements, **the location of a prescriptive easement is not fixed by agreement** between the parties or their predecessors in interest." **Id.** at 226 (citation omitted; emphasis added). The **McNaughton** court further rejected the servient estate holder's claim that the location of the express easement was ambiguous because the deed granting the easement failed to include a specific metes and bounds description. **Id.** at 229. The **McNaughton** court reasoned that the easement existed based on the obvious nature and use of the easement, which was a clearly visible "right of passage over the Two Lanes across the Failor Farm." **Id.**

Similarly, in the instant matter, multiple parties at trial testified with regard to the nature and use of the roadway by the defendants and Alder Run's predecessors in title, the Forceys, such that its general boundaries and location were self-evident. (**See** notes of testimony, 12/12/16 at 8-19, 40-44, 50-51.) Under **McNaughton**, it follows that a survey, engineer's drawing, and/or metes and bounds description was unnecessary in order to establish the existence of a prescriptive easement in this matter. Lutz's first claim of trial court error, therefore, warrants no relief.

Although not binding on this court, we find the holdings of a number of our sister jurisdictions that have addressed this issue particularly persuasive. For example, in **Oshita v. Hill**, 308 S.E.2d 923 (N.C.App. 1983), the Court of Appeals of North Carolina concluded that:

> Substantial identity of the easement simply means that the way used followed a reasonably definite and specific line during the period involved. While there may be slight deviations in the line of travel there must be a substantial identity of the thing enjoyed. **But since prescriptive ways are established by custom and usage, rather than by road builders and engineers, a metes and bounds description is not required; that the way can be identified and located from the testimony given is sufficient.** The testimony of plaintiffs' chief witness as to the course and location of the road, that it was there before 1932, and has not changed since then, was sufficient to establish this element.

**Id.** at 926 (citation and internal quotation marks omitted; emphasis added); **see also Ventres v. Goodspeed Airport, LLC**, 881 A.2d 937, 952 (Conn. 2005), **cert. denied**, 547 U.S. 1111 (2006) (the Supreme Court of Connecticut held that "[t]he boundaries of a prescriptive easement need not be described by metes and bounds if the character of the land makes such precise description impossible." (citation omitted)); **Johnston v. Bates**, 778 S.W.2d 357, 365 (Mo.Ct.App. 1989) (the Missouri Court of Appeals held that "[t]he fact that [the prescriptive easement] is not described by metes and bounds, either by plaintiffs or the court, does not invalidate the easement.").

**B.      Time-period of adverse usage of the prescriptive easement**

Lutz next argues that the trial court erred in granting Alder Run a prescriptive easement over his property because Alder Run "failed to present any evidence as to when the twenty-one year time period of adverse usage occurred." (Lutz's brief at 23.)  The record belies this contention.

This court has long recognized that it is unnecessary to establish the exact date of the beginning of the adverse use "where adverse, uninterrupted, and continuous user is shown covering the twenty-one year period[,]" because the prescriptive right is based upon the presumption of a lost grant.  ***Steel v. Yocum***, 151 A.2d 815, 816 (Pa.Super. 1959) (citation omitted).  Moreover, unlike the doctrine of adverse possession, "one claiming an easement by prescription need not show an exclusive and distinct use."  ***Newell Rod and Gun Club, Inc. v. Bauer***, 597 A.2d 667, 670 (Pa.Super. 1991).  Direct use by predecessors in title for 21 years is sufficient to establish open, notorious, continuous, uninterrupted, adverse, and hostile use.  ***Keefer v. Jones***, 359 A.2d 735, 737-738 (Pa. 1976).  It is well settled that the adverse use of a right-of-way by a prior owner may be tacked to the use of a subsequent owner.  ***See Matakitis v. Woodmansee***, 667 A.2d 228, 232 n.1 (Pa.Super. 1995) (stating, "[u]nder Pennsylvania law, landowner who is in privity with the prior adverse possessor may tack prior use of an easement onto his or her own period of use to establish continuous possession for the required

twenty-one years" (citation omitted)), **appeal denied**, 682 A.2d 311 (Pa. 1996).

Turning to the instant case, the testimony presented at trial established that the roadway in question has been in existence for over 100 years and had been utilized as a means of both access and timber removal by Alder Run's predecessors in title, the Forceys, for decades. As noted by the trial court, Alder Run's predecessor in title was Clearfield Bank and Trust Company, who held the property in trust for the Thomas H. Forcey heirs until it was sold to Alder Run at auction in 2003; Thomas H. Forcey became the owner of the land by deed dated November 15, 1880. (**See** trial court opinion and order, 2/21/17 at 3.) At trial, Durvin Z. Wick testified that his grandmother was born on what is now defendant Seilers' property and that his family has utilized the roadway in question since 1898, "[a]nd before that probably." (Notes of testimony, 12/12/16 at 32.) Wick further testified that Alder Run's predecessors in title, the Forceys, used the roadway to haul timber and gain access to their property to hunt. (**Id.** at 36-37). Likewise, Edward Veres, Jr., testified that he has lived on the farm next to the Lutz property nearly his entire life and that the Forceys were in the timber business and utilized the roadway in question to haul timber off their property. (**Id.** at 6-7, 16.) Alan Larson, whose family has utilized the roadway in question in connection with their strip mining business since 1947, further corroborated Veres' testimony. (**Id.** at 40-41.) Larson testified that the Forceys were involved in

the timber business and hauled timber out of what is now Alder Run's property via the roadway. (**Id.** at 43-44.)

The record further reflects that the majority of witnesses who testified during the December 12, 2016 jury trial confirmed that, in addition to Alder Run's predecessors in title, the surrounding property owners to the north of Lutz's property have historically used the roadway in question to access their properties. At trial, Lutz acknowledged: that he was aware of this roadway immediately prior to or just after purchasing his property in 2002; that he knew that the roadway was utilized by a number of the aforementioned defendants to gain access to their properties; and that, in fact, he provided keys to some of them after constructing the gate in 2004. (**Id.** at 50-51, 65-67.)

## C. Continuity of adverse use of the prescriptive easement

Lutz next argues that the trial court erred in granting Alder Run a prescriptive easement over his property because "[n]o evidence was presented at trial which would support the trial court's finding as to continuous and adverse usage of the alleged prescriptive easement by Alder Run or its predecessors in title." (Lutz's brief at 24.) This claim is meritless.

Continuity for purposes of an easement by prescription does not necessarily mean daily, weekly, or even monthly use. "To establish a prescriptive easement, the proponent of the easement **need not prove**

**constant use of the property**." **_Moore v. Duran_**, 687 A.2d 822, 826 (Pa.Super. 1996) (citation omitted; emphasis added), **_appeal denied_**, 700 A.2d 442 (Pa. 1997). "Rather, continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right." **_Thomas A. Robinson Family Ltd. P'ship v. Bioni_**, 178 A.3d 839, 848 (Pa.Super. 2017) (citations omitted), **_appeal denied_**, 194 A.3d 560 (Pa. 2018). Instantly, we agree with the trial court that the evidence at trial demonstrated that the Forceys' course of conduct in utilizing this rural roadway clearly satisfied this element. It is well settled that "the nature of the easement," including its frequency of use and whether it is located in a city or rural countryside, are important factors "in a determination of whether an easement exists and exactly what rights have been acquired thereunder." **_Minteer v. Wolfe_**, 446 A.2d 316, 318-319 (Pa.Super. 1982).

Based upon our review of the evidence in the light most favorable to Alder Run, the verdict winner, we discern no error on the part of the trial court in concluding that Alder Run, through its predecessors in title, have demonstrated "open, notorious, and uninterrupted [use] for a period of 21 years[,]" sufficient to obtain an easement by prescription. **_McNaughton_**, 981 A.2d at 225 n.2; **_see also Matakitis_**, 667 A.2d at 232 n.1 (holding that the adverse use of a right-of-way by a prior owner may be tacked to the use of a subsequent owner). Accordingly, we agree with the trial court that

Alder Run "should not be barred from exercising such [prescriptive] rights due to a gate or any other obstruction placed across the roadway" by Lutz. (**See** trial court opinion and order, 2/21/17 at 8.)

**D.    Trial court's application of the Unenclosed Woodlands Act**

We now turn to Lutz's claim that "[t]he trial court erred in its application of 68 P.S. [§] 411[,]" commonly known as the Pennsylvania Unenclosed Woodlands Act.[3]  (Lutz's brief at 32.)

As discussed, the general rule is that a user can acquire a prescriptive easement by demonstrating "(1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use [of land] for a period of 21 years." **PA Energy Vision, LLC v. South Avis Realty, Inc.**, 120 A.3d 1008, 1014 (Pa.Super. 2015) (citation omitted), **appeal denied**, 138 A.3d 6 (Pa. 2016). However, in 1850, the General Assembly carved out an exception to this general rule by forbidding the acquisition of prescriptive easements through unenclosed woodlands.  **See** 68 P.S. § 411.  Thus, even where the factors necessary to obtain a prescriptive easement have been established, an adverse user is prohibited from acquiring a prescriptive easement through an unenclosed woodland.  **Martin v. Sun Pipe Line Co.**, 666 A.2d 637, 288 (Pa. 1995).

---

[3] Act of April 25, 1850, P.L. 569, § 21, **repealed**, Act of December 10, 1974, P.L. 867, No. 293, § 19, **reenacted and amended**, Act of July 1, 1981, P.L. 198, No. 61.

Section 411 provides as follows:

> No right of way shall be hereafter acquired by user, where such way passes through uninclosed[4] woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure.

68 P.S. § 411.

The crux of Lutz's claim is that Alder Run is strictly prohibited from obtaining a prescriptive easement over his property because the roadway passes through an "unenclosed woodland." (Lutz's brief at 32-33.) Although the Legislature failed to define the term "unenclosed woodland" in Section 411, this court has repeatedly recognized that "[i]t is the character of the land itself which is determinative." *Sprankle v. Burns*, 675 A.2d 1287, 1289 (Pa.Super. 1996) (citations omitted), *appeal denied*, 686 A.2d 1312 (Pa. 1996); *see also Martin*, 666 A.2d at 641.

In *Williams v. Taylor*, 188 A.3d 447 (Pa.Super. 2018), a panel of this court recently summarized the history of cases in this Commonwealth that have addressed unenclosed woodlands:

> Beginning in 1896, for example, in *Kurtz v. Hoke*, [33 A. 549 (Pa. 1896)], no one questioned that the alleged easement "extended for about 100 yards through the improved part" of the land "and then over the woodland of plaintiff." Thus, no easement was permitted. The alleged easement was also barred in *Trexler* [*v. Lutz*, 118 A.2d 210, 210 (Pa.Super. 1955)], where it extended "through a tract of

---

[4] This statute uses "uninclosed." We have edited that spelling to the modern form of "unenclosed" throughout this memorandum.

- 16 -

110 acres of woodland of defendants to contiguous woodland of plaintiff." Similarly, in [*Martin*, 666 A.2d at 641], the court granted summary judgment for the landowners and rejected an easement when affidavits and aerial photographs showed that "the premises were in fact heavily forested." ***See also Humberston v. Humbert***, [407 A.2d 31, 32 (Pa.Super. 1979)] (where for most of the 21 years, the easement went through unimproved and unenclosed woods), and [*Sprankle*, 675 A.2d at 1288] (where the record revealed that the dirt road crossed through unenclosed woodland, and a prescriptive easement could not be granted for timbering purposes).

At the other end of the spectrum, this Court allowed a prescriptive easement in ***Eble v. Jones***, [44 A.2d 761, 762 (Pa.Super 1945)], where the facts of record clearly showed that the "premise never contained woodland;" only sparse underbrush and two or three trees, and in [*Minteer*, 446 A.2d at 321], where the growth alleged to be woodland consisted merely of "a fence row of trees and brush as is commonly found to exist on the boundary lines of land located in rural areas."

In sum, our review of the cases from nearly two centuries found only two instances where an easement was permitted because it definitely did not pass through woodlands (***Eble*** and ***Minteer***), and five where an easement was barred because it definitely did pass through unenclosed woodlands (***Kurtz***, ***Trexler***, ***Humberston***, ***Martin***, and ***Sprankle***).

***Williams***, 188 A.3d at 451-452 (citation formatting amended).

***Williams*** involved a property owner who brought a quiet title action against three logging companies, seeking to prohibit them from driving over a private lane on his property. *Id.* at 448. Following a non-jury trial, the Court of Common Pleas of Adams County held that the logging companies

could not obtain a prescriptive easement under Section 411, and the logging companies appealed. *Id.* The **Williams** court concluded, based upon its review of the aerial and ground level photographs of the property in question, that the trial court properly determined that Williams' property constituted an unenclosed woodland under Section 411, and thus, the logging companies were precluded from obtaining a prescriptive easement over his property. *Id.* at 454. In reaching this conclusion, the **Williams** court found that a "woodland," for purposes of the Unenclosed Woodlands Act, "is an area of land that trees and bushy undergrowth cover, synonymous with a 'forest.'" *Id.*

Instantly, our exhaustive review of exhibits presented in this case, including the numerous ground-level photographs of the property and the 4' x 3' aerial map depicting the easement, reveals that the trial court properly determined that the land surrounding the roadway was not an "unenclosed woodland" within the meaning contemplated by Section 411. Rather, the aerial map reveals that the land through which the roadway in question passes, although quite rural, is not "heavily forested" nor entirely "unimproved." We further note that the application of Section 411 to the instant matter would not serve "the statute's apparent purpose to protect woodland property owners against unknown and undesired encroachment upon their property rights," **Tomlinson v. Jones**, 557 A.2d 1103, 1106 (Pa.Super. 1989), as the evidence at trial established that Lutz was fully aware that the roadway was utilized by a number of the aforementioned defendants

to gain access to their properties, and in fact, he acknowledged providing keys to some of the property owners following construction of the gate. (**See** notes of testimony, 12/12/16 at 50-51, 65-67.) Accordingly, we discern no abuse of discretion on the part of the trial court in concluding that Section 411 did not operate to bar Alder Run's acquisition of prescriptive right to use the roadway.

### E.     Burden of proof under the Unenclosed Woodlands Act

In his final claim, Lutz argues that the trial court erred in shifting the burden to him to prove that the right-of-way in question passed through an unenclosed woodland. (Lutz's brief at 34-35.) We disagree. This court has recognized that, once the alleged easement holder has met its burden of proof that its use was adverse, open, notorious, continuous, and uninterrupted for a period of 21 years, as Alder Run did in the case **sub judice**, a landowner has the burden of proving that the alleged easement was being utilized pursuant to a grant of permission, contract, or special license. **See Walley v. Iraca**, 520 A.2d 886, 890 (Pa.Super. 1987). Likewise, it follows that as the landowner raising an affirmative defense under Section 411, it was Lutz's burden to establish that Alder Run's right-of-way passed through an unenclosed woodland. **See Sabella v. Appalachian Dev. Corp.**, 103 A.3d 83, 93 (Pa.Super. 2014) (stating, "a defendant asserting an affirmative

defense has the burden of proof as to that affirmative defense."). Accordingly, Lutz's final claim of error fails.

Based on the foregoing, we discern no abuse of the trial court's discretion in concluding that Alder Run was entitled to an easement by prescription. Accordingly, we affirm the May 10, 2017 judgment of the trial court.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2019