667 A.2d 228

**Mr. & Mrs. Ronald R. MATAKITIS**

**v.**

**John WOODMANSEE and Carol Woodmansee.**

**Ronald MATAKITIS and Elizabeth Matakitis, His Wife**

**v.**

**John WOODMANSEE and Carol Woodmansee, His Wife, Alice Jean Ray and Katheryn M. May.**

**Appeal of John WOODMANSEE and Carol Woodmansee, His Wife.**

Superior Court of Pennsylvania.

Argued Aug. 8, 1995.

Filed Oct. 23, 1995.

434

436

Andrew Hailstone, Scranton, for appellants.

Vincent A. Scamell, Jr., Honesdale, for Ronald & Elizabeth Matakitis, appellees.

Warren Schloesser, Honesdale, for Alice & Katheryn May, appellees.

Before ROWLEY, President Judge, and CIRILLO and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order dated November 22, 1994, dismissing appellants' exceptions and entering a final decree. Appellants, John and Carol Woodmansee ["Woodmansee"], now raise the following issues for our review.

I. WHETHER [APPELLEES] RAY AND MAY ARE ENTITLED TO A RIGHT OF WAY ACROSS WOODMANSEE'S LOT?

II. WHETHER THE WIDTH OF THE RIGHT OF WAY MAY EXCEED FIFTEEN FEET?

III. WHETHER THE RIGHT OF WAY MAY BE UTILIZED FOR COMMERCIAL PURPOSES?

IV. DID WOODMANSEE JUSTIFIABLY REMOVE A GATE CONSTRUCTED BY MATAKITIS ALONG THE RIGHT OF WAY?

V. WHAT IS THE PROPER MEASURE OF DAMAGES TO WOODMANSEE'S PROPERTY AS A RESULT OF MATAKITIS' DESTRUCTION OF TWENTY–SEVEN (27) TREES THEREON?

*See* Appellant's Brief at 3. For the following reasons, we affirm.

Woodmansee owns two adjoining lots adjacent to Spruce Lake. Appellees, Ronald and Elizabeth Matakitis ["Matakitis"], own a larger lot which borders the Woodmansee property on two sides, and also borders the lake. Appellees, Alice Jean Ray ["Ray"] and Katheryn M. May ["May"], each own lots located on Route 370 which adjoin Matakitis' property, but are not contiguous to the lake.

Over the course of time, an eight foot wide dirt path evolved from Route 370 to Spruce Lake, which passed through all four properties. On or about June 24, 1991, Woodmansee spread shale on the right of way to make it more accessible to motor vehicles. Subsequently, Matakitis sued Woodmansee for damages resulting from the shaling operations. Woodmansee counterclaimed for $20,000.00 in damages, alleging that Matakitis cut trees on the Woodmansee property, thereby depreciating the value of the property.

Thereafter, on June 28, 1993, Matakitis brought an action in equity against Woodmansee, Ray, and May, seeking a declaratory judgment fixing the location, nature, and extent of the right of way. Matakitis also sought to have a gate replaced, which had been located along the right of way but was removed by Woodmansee. On May 2, 1994, the trial court consolidated the cases into one equity matter. After a bench trial, the trial court entered a decree nisi finding that: (1) the right of way exists through the four properties; (2) all the parties are permitted to utilize the right of way; (3) the placement of red shale by Woodmansee constituted maintenance; (4) the location and width shall not exceed its present

width of fifteen (15) feet and shall not be altered; (5) Matakitis shall pay to Woodmansee three hundred ($300.00) dollars for the removal of the trees; (6) Woodmansee shall restore the gate in question; and (7) there shall be no utilization of the right-of-way for commercial purposes. Exceptions were filed and the trial judge entered a final decree on November 22, 1994, based upon the decree nisi, adding only that the gate at issue shall be kept locked at all times. This timely appeal followed.

■ Preliminarily, we note that "the scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." *Leidigh v. Reading Plaza General,* 431 Pa.Super. 310, 314, 636 A.2d 666, 667 (1994). With this standard in mind, we will address the issues raised on appeal.

Woodmansee now contends that the trial court erred in finding that Ray and May are entitled to a right of way across Woodmansee's lot. First, Woodmansee complains that because Ray and May never counterclaimed for a right of way, the trial court should not have entered a decree regarding their rights to use the right of way. Second, Woodmansee argues that the trial court improperly found that Ray and May had an easement by prescription.

Our Supreme Court has stated that "[w]here equity assumes jurisdiction for one or more purposes, it will retain jurisdiction for all purposes to give complete justice between the parties." *Armstrong School District v. Armstrong Education Association,* 528 Pa. 170, 178, 595 A.2d 1139, 1143 (1991).

■ In the instant case, we first note that Ray and May were named as defendants in the original equity action in which Matakitis sought a declaratory judgment as to the nature, location, and extent of the right of way. Furthermore, in their answer, Ray and May specifically stated, "it is believed that all parties to this action have the use of the right of way as it originally existed in a manner consistent with the rights of ingress, egress and regress as they appear in the

deeds." *Answer to New Matter and Counterclaim,* ¶ 54. Finally, a review of the record reveals that both Ray and May offered testimony regarding the history, nature, and use of the right of way. N.T., August 2, 1994 at 122–42. Therefore, we find the trial court had jurisdiction to enter a decree adjudicating Ray's and May's right to use the easement through Woodmansee's property. *Armstrong, supra.*

 We next examine whether the trial court properly found that Ray and May have a right of way across the Woodmansee property. A review of the relevant deeds reveals that, although Ray and May have a right of way to reach Spruce Lake through the Matakitis property, no right of way over the Woodmansee property was ever conveyed to the owners of what is now the Ray and May properties. Therefore, we must determine whether Ray and May acquired an easement by prescription to utilize the right of way across the Woodmansee lot.

 "An easement or right-of-way by prescription arises by adverse, open, continuous, notorious, and uninterrupted use of the land for twenty-one years." *Waltimyer v. Smith,* 383 Pa.Super. 291, 294, 556 A.2d 912, 913 (1989). Moreover,

> In establishing a prescriptive easement, constant use need not be demonstrated in order to establish the continuity of the use. Rather, "continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right."

*Newell Rod and Gun Club, Inc. v. Bauer,* 409 Pa.Super. 75, 81, 597 A.2d 667, 670 (1991) (quoting *Dunlap v. Larkin,* 342 Pa.Super. 594, 608, 493 A.2d 750, 757–58 (1985)).

 In the instant case, Ray testified that although she had owned the property for only six to eight years, her mother owned the same property since about 1939, and that she had lived on the property as a child. N.T., August 2, 1994 at 123. She further testified that she used the right of way three or four times a year herself, and that her tenants also used the right of way. *Id.* at 131. May testified that she had owned

the property since 1977, that her father was the prior owner, and that she had resided on the property since second grade. *Id.* at 136. May also stated that she used the right of way three or four times a year. *Id.* at 140. We find that this conduct amounted to adverse, open, continuous, notorious, and uninterrupted use of the land for twenty-one years.[1] *Waltimyer, supra; Newell, supra. See also Waksmunski v. Delginis*, 391 Pa.Super. 37, 570 A.2d 88 (1990) (where direct evidence presented that easement was used openly, notoriously, and continuously for more than twenty-one years, equity court's determinations will not be reversed). Consequently, we find that the trial court did not abuse its discretion in finding that May and Ray have acquired an easement by prescription to utilize the right of way.[2] *Leidigh, supra.*

■ Woodmansee next argues that the trial court erred in holding that the width of the right of way over the Matakitis, Ray, and May properties may not exceed fifteen feet and that it may not be utilized for commercial purposes.

Our Supreme Court recently stated:

1. We note that Ray and May gained their prescriptive easement by tacking their parents' period of use of the easement onto their own use. *See McCormick v. Camp Pocono Ridge, Inc. II*, 781 F.Supp. 328, 332 (M.D.Pa.1991) (under Pennsylvania law, landowner who is in privity with the prior adverse possessor may tack prior use of an easement onto his or her own period of use to establish continuous possession for the required twenty-one years); *Lednak v. Swatsworth*, 33 D. & C.3d 535, 537 (1984) (" 'Privity' denotes merely a succession of relationships to the same thing. The successive occupants must claim through their predecessors, and not independently, to make the holding continuous for the required period."). Here, Ray and May were clearly in privity with their parents, therefore tacking is permissible to establish continuous possession.

2. Woodmansee also asserts that the enclosed woodlands rule, which prevents acquisition of an easement through unenclosed woodlands, would defeat Ray's and May's prescriptive easement. However, as the Woodmansees' relatively small lot contains a residential building, as well as open areas near the beach, the property can not be considered enclosed woodlands, and therefore the enclosed woodlands rule is inapplicable. *See Minteer v. Wolfe*, 300 Pa.Super. 234, 446 A.2d 316 (1982) (character of the land itself determines whether the enclosed woodland act applies); *Babcock v. The Wilderness Club*, 27 D. & C.3rd. 84 (1982) (the enclosed woodlands act was originally enacted to protect owner of large areas of virgin timber).

It is well established that the same rules of construction that apply to contracts are applicable in the construction of easement grants. . . . In ascertaining the scope of an easement, the intention of the parties must be advanced. "Such intention [of the parties] is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made." Where the grant of an easement is unrestricted, the grantee is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted. . . . Thus, our cases tell us that **when a grant of an easement is ambiguous we must determine if the grantee's asserted use is a reasonable and necessary use** in relation to the original purpose of the grant and within the intention of the original parties to the grant.

*Zettlemoyer v. Transcontinental Gas Pipeline,* 540 Pa. 337, 344, 657 A.2d 920, 924 (1995) (citations and quotations omitted) (emphasis added).

The portion of the right of way at issue here was created by Jessie and Abbie Temperton, who at one time owned all four of the parties' properties. On May 9, 1919, the Tempertons conveyed what is now the Matakitis, Ray, and May properties to Lela S. Dibble, but reserved for themselves, their executors and assigns "a way of ingress, egress, and regress convenient from the highway [now Route 370] to [what is now the Woodmansee lot]." *Deed,* May 9, 1919, at 2.

In the instant case, the Woodmansees sought a decree allowing expansion of the right of way to fifty feet in width in order to accommodate two-way traffic, and a decree allowing the easement to be used for commercial purposes, so that their property could be utilized as a bed and breakfast inn. Although this deed was ambiguous, we agree with the trial court that it would be unreasonable to expand the right of way so that appellant can now utilize the property for a bed and breakfast inn. *Purdy v. Zaver,* 398 Pa.Super. 190, 198, 580 A.2d 1127, 1131 (1990) ("The owner of a dominant estate may not exercise the rights granted to him or her without regard

to the rights of the servient owner."); *Hoch v. Philadelphia Elec. Co.*, 341 Pa.Super. 598, 604, 492 A.2d 27, 31 (1985) ("only reasonable increases in the burden imposed on the easement are permitted"). Consequently, we will not upset the trial court's decision.[3] *Leidigh, supra; Zettlemoyer, supra.*

 Appellant next contends that the trial court erred in holding that Woodmansee wrongfully removed the gate constructed by Matakitis.

 The erection of a gate should not be restrained unless it is an unreasonable interference with an easement, or completely denies the rights of the user. *Taylor v. Heffner*, 359 Pa. 157, 164, 58 A.2d 450, 454 (1948). "Gates or moveable bars, if not an unreasonable obstruction to the use of [an easement], are not an unlawful abridgement of the right of passage under easement." *Haig Corporation v. Thomas S. Gassner Co.*, 163 Pa.Super. 611, 615, 63 A.2d 433, 435 (1949).

In the instant case, Matakitis provided Woodmansee with keys to the gate in question, but Woodmansee refused to accept the keys. Instead, Woodmansee unilaterally removed the gate. In light of the minimal inconvenience a locked gate causes, and the protection it affords all four parties, we find that the trial court did not abuse its discretion in ordering Woodmansee to restore the gate. *Leidigh, supra; Haig Corp., supra* (where plaintiffs were given a key, a locked gate was not an unreasonable interference with plaintiffs' right to use the easement).

 Finally, appellant contends that the trial court abused its discretion in calculating the amount of damages to Woodmansee's property at $300.00.

**3.** We note that the trial court improperly considered the actions of persons who resided on the respective properties after the original parties to the agreement. *Lease v. Doll*, 485 Pa. 615, 622 n. 7, 403 A.2d 558, 562 n. 7 (1979) (only attending circumstances known to the parties at the time of the grant are relevant). However, even omitting the testimony regarding successive owners' use of the easement, we conclude that the record supports the finding that the expansion Woodmansee seeks is unreasonable.

■ The measure of damages for injury to real property "is the cost of repairs where that injury is reparable unless such cost is equal to or exceeds the value of the injured property." *Kirkbride v. Lisbon Contractors, Inc.*, 385 Pa.Super. 292, 298, 560 A.2d 809, 812 (1989). However, where the injury to the property is permanent, "the measure of the damages becomes the decrease in the fair market value of the property." *Id.* at 299, 560 A.2d at 812. *See also Richards v. Sun Pipe Company*, 431 Pa.Super. 429, 433, 636 A.2d 1162, 1163–64 (1994).

In the instant case, the Woodmansees alleged that Matakitis, while moving a trailer onto their plot, cut down trees on the Woodmansee property. Woodmansee's expert Mary Rapkowitz testified that as a result of tree removal, the value of the Woodmansee property decreased by $30,000.00. However, the trial court found Ms. Rapkowitz's testimony neither credible nor realistic. A review of the record reveals that Woodmansee purchased the entire property in 1986 for $15,000.00 and that the trees in question were small, having diameters from three-quarters to two and three quarters inches. Therefore, we find that the trial court did not abuse its discretion in fixing the amount of damages at $300.00. *Weir by Gasper v. Estate of Ciao*, 521 Pa. 491, 503, 556 A.2d 819, 824 (1989) ("In a bench trial it is the duty of the trial judge to judge credibility of the witnesses and to weigh their testimony. His findings will not be reversed unless it appears that he has clearly abused his discretion or committed an error of law."); *Hodges v. Rodriguez*, 435 Pa.Super. 360, 366, 645 A.2d 1340, 1343 (1994) ("the trial court is free to believe all, part, or none of the evidence that is presented"); *Boyd & Mahoney v. Chevron U.S.A.*, 419 Pa.Super. 24, 35, 614 A.2d 1191, 1197 (1992) ("[i]n reviewing an award of damages, the appellate court will defer to decisions of the trier of fact, who is in a superior position to appraise and weigh the evidence"), *appeal denied*, 535 Pa. 629, 631 A.2d 1003 (1993).

Accordingly, for the reasons stated above, we affirm the trial court's final decree.

Affirmed.