J-A19029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PENNSYLVANIA ELECTRIC COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WAYNE H. BORING AND PATRICIA A. BORING | |
| Appellants | No. 1829 WDA 2013 |

Appeal from the Judgment Entered November 4, 2013
In the Court of Common Pleas of Indiana County
Civil Division at No(s): 50260 CD 2010

| | |
|---|---|
| PENNSYLVANIA ELECTRIC COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WAYNE H. BORING AND PATRICIA A. BORING | |
| Appellees | No. 1863 WDA 2013 |

Appeal from the Judgment Entered November 4, 2013
In the Court of Common Pleas of Indiana County
Civil Division at No(s): 50260 CD 2010

BEFORE:  BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 04, 2014**

Wayne H. Boring and Patricia A. Boring ("the Borings") appeal from the judgment entered on November 4, 2013.  Pennsylvania Electric Company ("Penelec") cross-appeals from the same judgment.  We affirm.

* Former Justice specially assigned to the Superior Court.

The trial court accurately summarized the factual background of this case as follows:

At issue [in this case] is the location of [Penelec's] access to a[n easement] it holds over the property of [the Borings].

The Borings own property in East Wheatfield Township, Indiana County. On June 29, 1965, the Borings granted a[n easement] to Penelec across their property for the purposes of Penelec to construct, maintain[,] and operate[] two [] electrical lines. The [easement] is of record in Indiana County at Deed Book Volume 547, Page 516. Thereafter, Penelec placed a 230 k[ilovolt] electric transmission line on the property. The transmission line was installed in 1966. The [easement] is 305 feet in width.

Since installation of the transmission line Penelec has periodically entered onto the [easement] for the purposes of construction and maintenance, including b[ut] not limited to vegetation maintenance. The Borings claim that a portion of their property is not included in the [easement]. . . .

On September 8, 2008, a representative of Penelec sent a letter to the Borings informing them that Penelec was going to conduct vegetation maintenance on the [easement]. Included with the letter was a copy of the work plan. [Penelec] contracted with K. W. Reese, Inc. to perform the vegetation maintenance.[1] On December 15, 2008, [Penelec] entered the [easement] to perform the vegetation maintenance. Access was by way of what has been identified in this litigation as the "dirt road." The road crosses lands of the Borings. [Wayne] Boring had the road constructed and he maintains the road. . . .

On December 15, 2008, [Penelec] entered via the dirt road without incident[, although no advance notice was given that they would be working that day.] Sometime later [that day, Wayne] Boring, using his pick-up truck, blocked the dirt road preventing [Penelec] from exiting with their equipment. As a result the workers had to walk out of the [easement] leaving their equipment behind. The next day Penelec was given one

---

[1] For convenience, we refer to K.W. Reese, Inc. as Penelec because they were acting on behalf of Penelec.

time permission by a neighbor of the Borings to utilize [his or her] land to remove the equipment.

Findings of Fact and Conclusions of Law, 9/4/13, at 1-2 (certain internal quotation marks omitted).

The procedural history of this case is as follows. On February 18, 2010, Penelec filed a complaint in equity against the Borings seeking a declaration that the easement covered the length of the Borings' land, damages for Wayne Boring's actions in blocking Penelec's contractor from leaving the property, and attorney fees. On March 17, 2011, the Borings filed an answer and counterclaim. In their counterclaim, the Borings sought damages for the value of the trees that were removed and for damage done to the dirt road. On May 19, 2011, the trial court granted Penelec partial summary judgment and declared that the easement at issue covered the entire length of the Borings' property.

On June 9, 2011, the trial court certified its May 19, 2011 grant of partial summary judgment as a final order pursuant to Pennsylvania Rule of Appellate Procedure 341(c). On June 20, 2011, the trial court vacated its Rule 341(c) certification. Therefore, we quashed the Borings' appeal. *Pa. Elec. Co. v. Boring*, 995 WDA 2011 (Pa. Super. July 26, 2011) (*per curiam*).

On September 4, 2012, the trial court denied summary judgment as to the remainder of Penelec's claims. The case proceeded to a non-jury trial on August 9, 2013. As part of the non-jury trial, the trial court personally

examined the subject property. On September 4, 2013, the trial court issued findings of fact and conclusions of law along with its verdict. It found that: Penelec was entitled to use the Borings' dirt road to access its easement on the Borings' land; Wayne Boring had interfered with Penelec's use of its easement on December 15, 2008; that interference resulted in $2,170.78 in damages to Penelec; Penelec damaged the dirt road; the Borings were entitled to $3,380.00 in damages to repair the dirt road; the Borings were not entitled to recover for the trees removed by Penelec; Penelec was not entitled to attorney fees; and a stay was not appropriate. Both Penelec and the Borings filed post-trial motions. On October 22, 2013, the trial court denied both parties' post-trial motions. Judgment was entered on November 4, 2013. The Borings timely appealed to this Court and Penelec timely cross-appealed.[2]

The Borings raise four issues for our review:

1. Whether the trial court erred in determining that the [easement] encompasses the entirety of the subject property owned by [the Borings]?

2. Whether the trial court erred and/or manifestly abused its discretion in determining that Penelec's access to the [easement] shall be via the dirt road?

_____

[2] On November 19, 2013, the trial court ordered the Borings to file a concise statement of errors complained of on appeal ("concise statement"), *see* Pa.R.A.P. 1925(b), however, it did not order Penelec to file a concise statement. On December 2, 2013, the Borings filed their concise statement. On January 21, 2014, the trial court issued its Rule 1925(a) opinion. All issues raised by the Borings on appeal were included in their concise statement.

3. Whether the trial court erred and/or manifestly abused its discretion in awarding damages in the amount of $2,170.78 in favor of Penelec and against Wayne H. Boring, relative to Penelec's claim of intentional interference with the use of the [easement]; and whether the trial court erred in determining that the proof offered by Penelec in support of said damages was not inadmissible hearsay?

4. Whether the trial court erred and/or manifestly abused its discretion in denying the claim made by Wayne H. Boring and Patricia A. Boring for damages caused by Penelec to trees owned by Wayne H. Boring and Patricia A. Boring which were situated outside the confines of the at-issue [easement]?

Borings' Brief at 7 (internal quotation marks omitted).

Penelec also raises four issues for our review:

1. Is Wayne Boring qualified to render an opinion as to the cost of repairs to the dirt road?

2. Did the Borings use the wrong measure of damages and fail to present any evidence that the cost of repairs did not exceed the diminution in fair market value of the property?

3. Did the Borings use the wrong measure of damages and fail to provide any evidence or testimony as to the necessity of repairs or reasonableness of the cost?

4. Is the [trial] court's finding that the damages to the dirt road totaled [$3,380.00] supported by substantial, competent evidence?

Penelec's Brief at 4 (capitalization removed).

The Borings first contend that the trial court erred by granting Penelec summary judgment relating to the scope of the easement. As we have stated:

Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there

- 5 -

exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

**Nat'l Cas. Co. v. Kinney**, 90 A.3d 747, 752 (Pa. Super. 2014) (internal quotation marks and citations omitted).

"It is well established that the same rules of construction that apply to contracts are applicable in the construction of easement grants." **Zettlemoyer v. Transcon. Gas Pipeline Corp.**, 657 A.2d 920, 924 (Pa. 1995) (citation omitted). When interpreting a contract, "the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself." **W.A.M. v. S.P.C.**, 2014 WL 2959157, *3 (Pa. Super. July 2, 2014) (citation omitted).

The relevant language of the easement provides that:

Grantors[, the Borings,] hereby grant and convey to Grantee, [Penelec,] its successors and assigns, the right to construct, maintain and operate two electric lines consisting of wood and or metal structures, conductors, overhead and underground lightning, protective wires, private communication wires, guys, push braces and other accessory apparatus and equipment deemed by Grantee to be necessary therefor, upon, over, across and under the lands of Grantors situated in the Township of East Wheatfield County of Indiana, Commonwealth of Pennsylvania, bounded as follows: Being the same lands as described in deed recoded in the Indiana County Recorders Office in deed book vol. 473 at page 82 and being conveyed by Chester E. Hunt *et ux* by

article of agreement to Wayne H. Boring *et ux* recorded in the Indiana County Recorders Office in deed book vol. 543 at page 244. Said electric lines enter lands of Grantors from lands now or formerly of Gilbert P. Switzer and continuing across same to lands of Edward Mroczka as shown on Grantees drawing No E4961 to be attached hereto and made a part hereof.

Complaint, 2/18/10, at Exhibit 1.

Drawing E4961, which was attached to Penelec's complaint as Exhibit 1, includes a shaded portion of land that the Borings argue is not a part of the easement. Thus, the Borings argue that the easement ends approximately 350 feet short of the lands of Edward Mroczka.[3] Penelec contends that the drawing contained an error that caused a portion of the easement to be unintentionally shaded.

"As a general rule, if maps are referred to in a grant or conveyance they are to be regarded as incorporated into the instrument and are given considerable weight in determining the true description of the land." **Appeals of Dallas**, 82 A.2d 676, 680 (Pa. Super. 1951) (citation omitted). In this case, the language of the easement and the drawing attached and incorporated by reference differ as to the true description of the easement granted to Penelec. The language of the easement is clear that the easement runs the full length of the Borings' land from Switzer's land through to Mroczka's land. However, the drawing shows that the easement ends approximately 350 feet short of Mroczka's land.

---

[3] As Exhibit 1 of Penelec's complaint demonstrates, the Borings acquired the Hunt's property that is identified in the drawing. Both the Borings and Hunts signed the easement conveyed to Penelec.

As our Supreme Court has stated, "Before a court will interpret a provision in a . . . contract in such a way as to lead to an absurdity or make the . . . contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended." ***Pocono Manor Ass'n v. Allen***, 12 A.2d 32, 35 (Pa. 1940). The interpretation of the easement advanced by the Borings is both absurd and fails to accomplish the purpose of the easement. It is absurd that an electric company would choose to have a 350 foot gap in a power line. Furthermore, it would make the easement ineffective because the purpose of the easement was to allow for the power line to pass over the Borings' land from Switzer's land through to Mroczka's land. That goal would not be accomplished if the power line stopped suddenly in the middle of the Borings' land.

Thus, we conclude that the trial court correctly interpreted the easement to run the full length of the Borings' land from Switzer's land through to Mroczka's land. This is the only reasonable interpretation of the competing textual and graphical descriptions of the land over which Penelec was granted an easement. Accordingly, we conclude that the trial court did not err by granting Penelec partial summary judgment and declaring that the easement ran the length of the Borings' land.

The Borings next contend that the trial court erred by determining that Penelec could use the dirt road to access the easement. As we have stated:

[O]ur standard of review of a decree in equity is particularly limited and [] such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. The findings of the chancellor will not be reversed unless it appears the chancellor clearly abused the court's discretion or committed an error of law. The test is not whether we would have reached the same result on the evidence presented, but whether the chancellor's conclusion can reasonably be drawn from the evidence.

*Nat'l Cas. Co.*, 90 A.3d at 752 (internal quotation marks and citations omitted).

Furthermore,

Where the grant of an easement is unrestricted, the grantee is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted. Thus, our cases tell us that when a grant of an easement is ambiguous we must determine if the grantee's asserted use is a reasonable and necessary use in relation to the original purpose of the grant.

*Matakitis v. Woodmansee*, 667 A.2d 228, 232 (Pa. Super. 1995), *appeal denied*, 682 A.2d 311 (Pa. 1996) (ellipsis and citation omitted; emphasis removed). Thus, the question is whether Penelec's use of the dirt road is reasonable and necessary in order for it to enjoy its easement on the Borings' land.

In its findings of fact and conclusions of law, the trial court found that:

The following three [] access routes are proposed by the parties.

1. Penelec maintains that reasonable access should be on the dirt road.

2. The Borings propose access via a road/ATV trail[4] that enters the [easement] via Falcon Hollow [R]oad.

---

[4] The parties dispute whether this is an ATV trail or a road.

3. The Borings also propose that access could be obtained off State Route 56 where the [easement] abuts the road.

* * *

After a review of the testimony, exhibits and the view of the subject premises the [trial c]ourt f[ound] that the reasonable access is by way of the dirt road. It is the safest and easiest access to the [easement].

The Borings claim that access should be via the road/ATV trail. The topography of the subject premises in that area is classic ridge and valley. There are hills with steep valleys between. While the road/ATV trail could be a means of access, the [trial c]ourt f[ound] that it is not reasonable due to the steep topography. Use of the road by trucks and equipment would be difficult and dangerous.

The Borings also claim that Penelec could gain access to the [easement] via Route 56. Route 56 has been widened in this area to accommodate a passing lane. To gain access the guiderail would have to be removed. Beyond the guiderail is an extremely sharp drop off, clearly this is not a reasonable means of access.

The [trial c]ourt f[ound] that the dirt road is the most reasonable means of entry. There are no issues with a steep grade, there are no safety issues[,] and the trucks and equipment could easily reach the [easement]. The [trial c]ourt f[ound] that it is a reasonable and necessary means of access.

Findings of Fact and Conclusions of Law, 9/4/13, at 1-2 (internal quotation marks omitted).

We ascertain no abuse of discretion on the part of the trial court. The trial court personally examined the topography of the land at issue and determined that the two access roads proposed by the Borings were not reasonable. Thus, it concluded that the only reasonable access road was the

dirt road.  The trial court's reasoning was sound.  Accordingly, we conclude that the Borings' second issue on appeal is without merit.

In their third issue, the Borings argue that the trial court erred by awarding $2,170.78 in damages for Wayne Boring's intentional interference of Penelec's use of its easement.  The Borings also contend that the evidence admitted to support the damages was hearsay.  We begin by analyzing the Borings' claim that the evidence presented was hearsay.

The Borings contend that the trial court erred by admitting evidence relating to the amount of damages suffered by Penelec.  "[E]videntiary decisions are left to the trial court's discretion and will not be reversed absent a clear abuse of that discretion."  *Commonwealth v. Hicks*, 91 A.3d 47, 52 (Pa. 2014) (citation omitted).  The Borings argue that Penelec's witness, Richard Scott ("Scott"), relied upon a document which was hearsay when testifying as to the amount of damages incurred by Penelec as a result of Wayne Boring's intentional interference.

Scott is an employee of FirstEnergy, the parent company of Penelec.  *See* N.T., 8/9/13, at 5.  He testified that the contractor who worked on the Borings' land works on a fixed-fee arrangement and only bills Penelec if unforeseen circumstances arise.  *Id.* at 30-31.  Thus, Scott testified that all time billed from the contractor for work done on the Borings' property was caused by Wayne Boring's intentional interference.  *See id.*  Scott relied upon Plaintiff's Exhibit 5, which includes, *inter alia*, a list of expenditures to

the contractor related to the work on the Borings' land. ***See generally***

Plaintiff's Exhibit 5.

Among the exceptions to the general hearsay rule is the business

records exception, which provides that:

> A record (which includes a memorandum, report, or data
> compilation in any form) of an act, event or condition [is
> admissible] if,
>
> (A) the record was made at or near the time by—or from
> information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted
> activity of a "business", which term includes business,
> institution, association, profession, occupation, and calling of
> every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the
> custodian or another qualified witness, or by a certification that
> complies with Rule 902(11) or (12) or with a statute permitting
> certification; and
>
> (E) neither the source of information nor other circumstances
> indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Plaintiff's Exhibit 5 clearly falls within the parameters of the business

records exception. The record was made at the same time that the bill was

paid, satisfying the first requirement. The record was clearly kept in the

regularly course of a business conducted by FirstEnergy, satisfying the

second element. FirstEnergy regularly keeps track of expenses, satisfying

the third requirement. The conditions were shown by the testimony of a

qualified witness, Scott, satisfying the fourth requirement. Finally, there is no evidence of a lack of trustworthiness, satisfying the fifth requirement.

The Borings' argument is essentially that an employee of the contractor was required to testify in order to satisfy the fourth requirement. However, the business record in question was from FirstEnergy. It was not a bill from the contractor. Therefore, an employee of FirstEnergy, Scott, was qualified to testify as to the first through third requirements of Rule 803(6). Accordingly, the trial court did not err by admitting Plaintiff's Exhibit 5 and Scott's testimony.

The Borings also contend that there was insufficient evidence to support the trial court's award of damages to Penelec. As noted above, we review the trial court's decision for an abuse of discretion or error of law. **Matakitis,** 667 A.2d at 232 (citation omitted). The Borings essentially argue that because Penelec filed this equity action that they cannot recover for intentional interference. This argument is without merit. Merely because the Borings believed that Penelec did not possess an easement over the full length of the Borings' property does not mean that Penelec is not entitled to damages. In essence, the Borings argue that the only way to recover on an intentional interference claim is if a competent court has already set forth the duties and obligations of the parties. This is simply not the case. A party can recover on a claim for intentional interference even when a court has not previously set forth the parties' duties and obligations. **Cf. Reading**

J-A19029-14

***Radio, Inc. v. Fink***, 833 A.2d 199, 211–212 (Pa. Super. 2003), *appeal denied*, 847 A.2d 1287 (Pa. 2004) (sustaining jury verdict on intentional interference claim despite fact that no court had previously set forth the parties' duties and obligations).  Accordingly, there was sufficient evidence to award Penelec damages for Wayne Boring's intentional interference, and, the Borings' third issue on appeal is without merit.

In their final issue on appeal, the Borings claim that the trial court erred by denying their claim for damage done to trees not in the easement.  As noted above, we review the trial court's decision for an abuse of discretion or error of law.  ***Matakitis,*** 667 A.2d at 232 (citation omitted).

The trial court found:

The Borings next claim that trees were cut beyond the boundary of the [easement].  At the time of the view[ing] the [trial c]ourt had the parties agree as to the mid-point of the [easement]. The parties also agreed that the [easement] from the mid-point was 95 feet wide into the Boring[s'] property.  A tape measure was utilized to measure the distance.  At 75 feet from the mid-point of the [easement] the Penelec employee with the tape measure was in the woods on the Boring[s'] property and was barely visible.  The location of the trees cut was communicated by [Wayne] Boring and Mr. William Paxton his expert as to the value of the trees.  It [was] clear to the [trial c]ourt that the trees [that were] cut were within the [easement]; therefore, no damages are awarded.

Findings of Fact and Conclusions of Law, 9/4/13, at 7.

The Borings challenge the factual finding of the trial court, arguing that there was no competent evidence upon which the trial court could conclude that the trees that were cut fell within the easement.  We disagree.  The

evidence is the land itself (and surrounding trees). The trial court examined the land and determined that it would not be practicable for Penelec to cut trees that were outside the easement. Thus it drew a reasonable inference from the evidence and concluded that Penelec did not cut down trees that were outside the easement. In essence, the Borings request that we make a credibility determination on appeal. However, we may not make such a credibility determination. Instead, we may only reverse the trial court if it abused its discretion or committed an error of law. We ascertain no abuse of discretion or error of law. Accordingly, the Borings' final issue on appeal is without merit.

Having determined that the Borings are not entitled to relief on any of their four issues raised on appeal, we next turn to the issues raised by Penelec in its cross-appeal. Penelec first contends that Wayne Boring was not qualified to offer an opinion as to the cost to repair the dirt road. This argument is waived. "[I]n order to preserve a claim of error for appellate review, the party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings." *Law Office of Douglas T. Harris, Esq. v. Phila. Waterfront Partners, LP*, 957 A.2d 1223, 1229 (Pa. Super. 2008) (citations omitted). During trial, Wayne Boring was asked by his counsel what it would cost to repair the dirt road. N.T., 8/9/13, at 47-48. He responded that it would cost around $3,000.00. *Id.* at 48. Penelec did not

object to this question or answer. *See id.* The first time it raised the issue was in its motion for compulsory non-suit. *See id.* at 79-80. That was not a timely objection nor was it the appropriate stage of the proceedings to object to Wayne Boring's testimony. Accordingly, Penelec's first issue on appeal is waived. *See* Pa.R.A.P. 302(a).

Penelec next contends that the measure of damages used by the trial court was incorrect. Specifically, it contends that the Borings were limited to recovering the lesser of the diminution in the value of the land or the cost of repair. Penelec contends that the diminution in the value of the land was less than the cost of repair. This issue presents a question of law. *See Christian v. Yanoviak*, 945 A.2d 220, 226 (Pa. Super. 2008). Therefore our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Alicia*, 92 A.3d 753, 760 (Pa. 2014).

> The law in this Commonwealth is that:
>
> Assuming the land is reparable, the measure of damage is the lesser of: (1) the cost to repair, or (2) the market value of the damaged property (before it suffered the damage, of course). If the land is not reparable, the measure of damage is the decline in market value as a result of the harm.

*Christian*, 945 A.2d at 226 (citation omitted). In this case, the dirt road was repairable. Thus, the correct measure of damages was the lesser of the cost to repair it or the market value of the property. It does not take an expert to ascertain that the market value of the dirt road was over

$3,380.00. Accordingly, the trial court used the proper measure of damages.

Penelec next contends that there was no evidence presented as to the necessity of repairs. As noted above, we review the trial court's decision for an abuse of discretion or error of law. **Matakitis,** 667 A.2d at 232 (citation omitted). As to Penelec's claim that there was no evidence that a repair was necessary, the trial court relied upon images of the dirt road, ostensibly Defendant's Exhibit 2, in finding that the dirt road was damaged to the point of requiring repairs. **See** Findings of Fact and Conclusions of Law, 9/4/13, at 6. We have reviewed the exhibit and conclude that the exhibit provided a sufficient basis for the trial court to conclude that the damage to the dirt road required repairs. Furthermore, as has been noted above, the trial court personally visited the property and would have been able to see the damage to the road and conclude that the road required repairs. Thus, we ascertain no abuse of discretion on the part of the trial court in concluding that the dirt road needed repaired.

Penelec also contends that Wayne Boring's testimony was flawed because it was based on 2013 dollars instead of 2008 dollars. This argument is waived. As noted above, Penelec did not object when Wayne Boring testified that the cost of repairs was approximately $3,000.00. **See** N.T., 8/9/13, at 47-48. If Penelec believed that this testimony was inadmissible because it was based on 2013 prices instead of 2008 prices, it

was required to lodge a timely objection. **See Law Office of Douglas T. Harris**, 957 A.2d at 1229 (citations omitted). Penelec's failure to object to Wayne Boring's testimony results in the issue being waived for appellate review. **See** Pa.R.A.P. 302(a).[5]

Finally, Penelec contends that the trial court's award of $3,380.00 in damages is not supported by the record. Penelec contends that the only evidence presented as to the cost of repairing the dirt road was Wayne Boring's testimony that it would cost around $3,000.00. Thus, Penelec contends that the trial court erred by awarding damages in excess of $3,000.00. Penelec avers that the trial court relied upon evidence that was excluded at trial, **i.e.**, the Five-R Excavating estimate, which listed the cost of repairs at $3,380.00. As noted above, we review the trial court's decision for an abuse of discretion or error of law. **Matakitis,** 667 A.2d at 232 (citation omitted).

Wayne Boring testified that the cost of repairing the dirt road was "around $3000[.00]." N.T., 8/9/13, at 48. This is not an exact estimate, but instead was a round figure. The trial court decided that the actual cost of repairs was $3,380.00. We acknowledge that it appears odd that the trial

---

[5] Penelec raised the issue of 2008 prices versus 2013 prices in a motion in limine; however, that motion in limine did not address Wayne Boring's testimony. **See** Motion in Limine to Exclude Fix-R Excavating Estimate and Proposed Testimony of Ray A Ritenour, 5/23/13, at 6. Instead, it addressed the testimony of a separate witness. **See generally id.** Accordingly, Penelec's motion in limine was not sufficient to preserve this issue for appellate review.

court chose the same figure listed in the Five-R Excavating estimate; however, we conclude that the trial court's decision was not an abuse of discretion. "[A] trial court, acting as the finder of fact, is presumed to . . . disregard inadmissible evidence." ***Commonwealth v. Smith***, 2014 WL 3844118, *5 (Pa. Super. Aug. 6, 2014) (citation omitted).

A trial court has the ability to award damages in excess of the amount sought by a plaintiff (or in this case the counterclaimant). ***See Francis J. Bernhardt, III, P.C. v. Needleman***, 705 A.2d 875, 877–878 (Pa. Super. 1997). The trial court chose to do so in this case. The trial court's award of $380.00 more than the specific amount testified to by Wayne Boring was well within the trial court's discretion to interpret Wayne Boring's use of the phrase "around $3000.00." Accordingly, we conclude that the trial court did not abuse its discretion in awarding the Borings $3,380.00.

In sum, the trial court, sitting in equity, visited the subject property and examined the "lay of the land" for itself. It also heard evidence relating to the issues that were still pending and made reasoned decisions relating to each of those issues. We have reviewed the entire record and conclude that the trial court did not abuse its discretion or err as a matter of law. Accordingly, we affirm the trial court's judgment in its entirety.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/4/2014</u>